Case number 22-5549, Eric Zitzow et al. v. Auto Owners Insurance Company. Argument not to exceed 15 minutes per side. Mr. Evans, you may proceed for the appellant. Good morning. Good morning, Your Honors. I'm Matthew Evans of the Knoxville Bar here on behalf of the appellant, Auto Owners Insurance Carrier, and I'd also like to reserve three minutes for rebuttal. Very well. Your Honors, I appreciate you letting us have oral argument on this matter. We're here about two specific questions, issues, that we consider that need to be addressed by this court. We're asking for a new trial. First issue deals with the jury instruction that the court gave on the burden of proof as to the breach of contract. The second issue deals with the introduction of the damages proof from an expert witness named Mr. Gronschamp. Just in a brief way of history of what we're dealing with, this is a property damage case for a tornado that came through Chattanooga in April of 2020. Without question, a retaining wall fell. And when it fell, we had the resulting litigation. From start to finish of the litigation, Auto Owners has challenged the causation. It has challenged that the plaintiff's theory was that when caused the retaining wall to fell, Auto Owners brought in engineers. Those engineers said no, it fell because of hydrostatic pressure. You had competing experts. We had competing experts, Your Honor. That's exactly right. And so when we presented this to the jury, well, when the court did the initial jury charge to the jury, told the jury, even before opening, that the plaintiff's burden would be to show that there was a breach of contract by the insurance carrier. And from there, the parties proceeded. The plaintiff presented their expert dealing with the issue of this engineer that said, oh, no, wind damage caused this to fail. We disagreed with that. And the parties went through. This is what we did from start to finish. Even in our opening, we said this is because the plaintiff's burden here is to show by preponderance of the evidence that there's a breach of the contract. We fully acknowledge that for the exclusion, the hydrostatic pressure, that is the burden of the insurance carrier to prove. All right, but this is an all-risk policy, isn't it? It is an all-risk policy. I don't understand why you're fussing about burden of proof, because all the plaintiff really had to prove under the contract was there was an accidental loss. And then you're disputing what the cause is. You don't dispute there was an accidental loss. It might have been wind or it might have been water, but there was. They didn't blow up their own building. It was an accidental loss, right? It was an accidental loss, Your Honor. And as soon as they show that, don't they meet their burden of proof of showing there's a claim under the policy unless an exclusion applies, and then you claim the exclusion for water damage. Your Honor, I go back to the King's Palace case. That is a Western District case, and what it says is just because the policy is an all-risk policy does not allow the plaintiffs to sidestep their obligation to show that their claims fell within the coverage terms of the policy. And, Your Honor, that's what the parties agreed to in the jury instructions that were presented to the court, which was— Isn't exclusion an affirmative defense? It is, Your Honor. Or it's your burden? And we acknowledge that. What we're saying, Your Honor, is that in the jury instruction on the day of closing for the first time, the trial court changed the agreed jury instructions that the parties had agreed to on its own motion and said the plaintiff doesn't have to show by preponderance of the evidence that there was a breach of the contract. That's what the trial court changed on the morning of the closing arguments. This came out of the blue. It was on the court's own motion. And the jury verdict form then removed the question of did the insurance carrier breach the contract. That question was never presented to the jury. But did it really happen? If the district court did that, wasn't that harmless error? Because, in fact, you don't contest that there was an accidental loss. Your Honor, we do contest that there was an accidental loss. What we stipulated to, and I want to read that because this is the argument that we had with the trial court about that. The stipulation that we agreed to was that the parties stipulate that the property was damaged by a storm. And then we further stated that they disagree about whether the retaining wall collapsed primarily due to wind or hydrostatic pressure. And so, Your Honor, the point of that, and under Tennessee law, the plaintiff has to at least make a showing that there was a breach of the contract by some basis. That being the wind. And that's what we contested from start to finish. In the King's Palace case that you're relying upon, did the insurance company in that case stipulate that there was an accidental loss? Your Honor, I don't believe that they stipulated that there was an accidental loss. I believe that they simply stipulated that there had been damage. And I think that's the critical difference. Because when you read the policy, the policies say, so long as it comes under the coverage, A or B. Whatever, you know, if it fits within the coverage. And that's what we had been saying. And the plaintiffs used their expert to show repeatedly, oh, it had to be the wind damage.  My understanding is that this particular all-risk policy, in the initial review, doesn't address what caused the loss. It's just a question of, was there damage to the property? Am I right about that or wrong about that? Let me read the policy language, Your Honor. I don't want you to read the policy language. We're trying to figure out what it means. I understand, Your Honor. It is not precisely what is called an all-risk policy. What the policy language says is that we cover risk of accidental direct physical loss to cover property described under coverage A and coverage B. So if you go through each of those words, it seems like they're met in this case. There was an accident. There was a loss. I've forgotten the two or three other important words. But it seems to me they're all, check all those boxes here. And I understand your argument there, Your Honor. But what we go back to is when you look at the King's Palace case and the Mental Health Case Center, it says under an all-risk policy, the claimant has the initial burden of proving that a loss comes within the terms of the policy. And what we said from start to finish is this doesn't come within the terms of the policy because there's no evidence that wind caused this to fail. The plaintiff says, no, wind did cause it to fail. To simplify this maybe more than necessary, what did you stipulate to? What is the meaning of your stipulation? It seems to me you're saying it didn't mean anything in this case. Well, Your Honor, what we thought we were stipulating to was the fact that the wall failed, the retaining wall failed. And we were very precise in trying to do that. And I want to read that language. The parties stipulate that the property was damaged by a storm. Fair, we did. But disagree about whether the retaining wall collapsed primarily due to wind or hydrostatic pressure. Affirmative defense, right. And an exclusion in the policy for water damage. Which we have the burden of proving as to the exclusion. But it is also under Tennessee law the plaintiff's burden to prove that there was the initial breach. Okay. I think we understand. Maybe I'm more interested in your expert witness, lay witness business. Tell me something why you think that was an error. Yes, Your Honor. So going on to Mr. Grandchamp, that's the expert witness that was presented. We deposed all the witnesses that we understood were going to be testifying at trial. There was a damages expert that the plaintiff had, a Mr. Weintraub. After his deposition, we filed a Daubert motion and he was excluded. This was late in the process. Discovery has closed. Following that, we filed a motion for summary judgment with the court saying, there's no damages expert, there's no damages witness at all, and the plaintiff has presented no basis for damages. That motion for summary judgment was in front of the court. Going forward, we were required by January 5th of 2022 to exchange witness lists and to advise who would be testifying at trial. We never got that from the plaintiff, Your Honor. Well, Mr. Grandchamp was mentioned in the initial disclosures. He was mentioned in the initial disclosures, but nothing else was ever said about Mr. Grandchamp. You knew about his exhibit. We knew about his exhibit, but it had also been part of what Mr. Weintraub had been doing as well. We just assumed. You didn't object to the introduction of his exhibit. Well, we objected to everything related to it. Well, we didn't know that Mr. Grandchamp was going to be testifying until May the 9th. I understand that. But when it finally went to trial, Grandchamp had prepared something. I don't know what you refer to the document as. What do you call that? It was an exactimate estimate. Okay. So the exactimate estimate came into evidence, right? But we objected to everything related to it. Did you object when that was actually offered? I believe that we did, Your Honor. I don't think you did. Okay. And if we didn't? Does that change your position if you didn't? Your Honor, what I would say to that is to the extent that we objected, we filed a motion in Lemney to exclude Mr. Grandchamp, and we objected to everything related to him. I would have assumed that that— You're saying you had a continuing objection. We had a continuing objection. And I'm so sorry that if we didn't get that technical objection on the record as to his exactimate estimate, we assumed that that was part of what we did in the motion in Lemney. Zitzow's proof of loss was also admitted without objection, right? And that was the same figure, roughly the 75,000. It was. The Zitzow's—it was. The proof of loss— And your own representative, Craig Raymond— Yes. —talked about these exhibits, these documents. He did. So I guess my question is, okay, even if you're right that the district court erred in not considering Grandchamp an expert, why is it not harmless error? It's harmless error from this standpoint, Your Honor. One, we didn't know what was going to happen with this gentleman. We did have a counter damages expert ready, but we did not present that person at trial because we assumed that the plaintiffs were never going to— And there was absolutely no disclosure of this witness in any form or fashion, an expert disclosure regarding what his opinions are. And I—what I would say is that when you look at Mr. Grandchamp's testimony, he is an expert witness. This is an undisclosed expert witness, and there was no disclosure under Rule 26 for— What about what the district court said? So you just disagree with the district court? The district court said that he's going to be a lay witness, and that was on the morning of trial after he'd been disclosed a week before on their trial witness list. And, Your Honor, what I'd like to address there is 701C. Mr. Grandchamp has specific information that is specialized, technical. He's a certified public adjuster, and from that standpoint, he is not a lay witness. He is an expert witness, and my time is up, but— But what did he do aside from simply taking either the actual bills or the estimates of somebody else about what it would cost to fix this wall? He took those things, and he put it into a computer program. No, Your Honor. What else did he do? He was a certified public adjuster who came in and created an exactimate estimate for the repairs to both retaining wall— Where did the numbers come from that he put into the computer program? He created them. That's what he did as the public adjuster. So he didn't take somebody landscape guy's estimate of what it would cost to fix the wall? No, he assessed what was broken, what was damaged, and came up with estimates using that specialized software program to determine how it gets fixed. All right. Any further questions at this time? All right, Mr. Evans, you'll have your three minutes rebuttal. Thank you, Your Honor. Good morning. Good morning. May it please the Court, my name is Michael Weinstein. I'm here on behalf of Eric Zitzo and Tina Zitzo. In their brief, the appellant, Autumn Warner, has raised four issues, one regarding the jury charge, regarding the motion for summary judgment, Mr. Grangsham's testimony, as well as the issue of bad faith. As the Court has hit upon, this was an all-risk policy. The party stipulated that on April 12, 2020, due to a tornado, a retaining wall on a Zitzo property fell and caused damage to the house. That is undisputed. Because this is an all-risk policy, that was all that the Zitzos had as far as their burden was concerned, to show that the loss came under the policy. The reason why the King's Palace and the Southeast mental health cases are not really applicable is because, in those cases, the question was whether or not was there actually accidental direct physical loss. In those cases, the plaintiff first had to be able to convince the Court that there was accidental direct physical loss in order to shift the burden to the insurance company to prove the affirmative defense of an exclusion. Well, that's just going through the key words in the coverage section, right? That's correct. Now, Mr. Evans read us those, and I'm still trying to figure out which words in the coverage section were actually in dispute. Your position is none. They're all covered by the stipulation. That's exactly right. Our position is that, in an all-risk policy, once you show that it comes within that coverage section, which was stipulated to you by the parties, because this was a tornado and no one disputes what caused the damage, it then became auto owners' responsibility to prove an exclusion in the policy. What Mr. Evans seems to be thinking is that we had an affirmative obligation to show that the cause of loss was wind, which was just not the case. Now, yes, we did present expert testimony showing that the cause of the loss was wind. The reason we did that was because we knew they had experts that said the cause of the loss was water. Now, we could have retained an expert that said, well, they don't meet their burden to show that the cause of loss was water. We made the decision that we believe it actually fell because of wind, so let's get an expert who's going to opine that the cause of loss was wind. So that's what we did, not because we felt we had an obligation to prove that it was wind, but we felt that it was in our client's best interest to show that there was another cause of loss that would not be excluded under the policy. And I think that Judge Steger got it right, which is essentially, it's their burden to prove it was caused because of water. And they had an expert on it. The jury disagreed with their expert, and they ruled in our favor. And that's all we needed to do on an all-risk policy. Did it come within the initial coverage term? Was there an accidental direct physical loss? There was. It was stipulated. And at that point, the burden shifts to auto owners to prove that there was an exclusion in the policy. We never had a burden to show that it was wind. We made the selection we think it would be better for our case to show that we think it was wind, and that's what we did. Mr. Evans didn't speak to this, but I'm curious about your bad faith claim. It seems to me that's the weakest of your different claims here. And you're advancing this obstinance theory, that if an insurance company is obstinate, then therefore they can be found to be acting in bad faith by a jury. It seems to me here that the insurance company got this claim. They then hired an expert. The expert says that it comes within the exclusion. So I'm trying to figure out what they were obligated by case law to do after that point, the failure of which to do it, then can be held against them as bad faith. Sure. Well, Your Honor, what I would say is this, that right from the get-go, once Mr. Torres, who was the expert for auto owners, issued his report that said he thought that the cause of the loss was hydrostatic pressure. At that point in time, Mr. Zitzo almost immediately reached out to the insurance adjuster and told him, I don't believe this was hydrostatic pressure. I want another look at this. And what the adjuster, and this is in the record, Your Honor, what the adjuster told Mr. Zitzo was, well, the only way we're going to take another look at it is if you get an expert to give us an opinion that it was something other than hydrostatic pressure. And that's what Mr. Zitzo did. Is there anything wrong up to this point? No. I mean, as far as their initial basis of denial, I would say there's not. And so what Mr. Zitzo did is he went out and he hired a local engineer to take a look at this loss and give an opinion as to what caused the waterfall. And that engineer came up with the opinion that he believed that it was wind. He also said it might have been ground vibrations, but the predominant cause was wind. And so at that point, Mr. Zitzo said, well, look, I did what auto owners told me to do. I have to present them evidence that there was a difference of opinion for them to take another look at it. And when he did... Is there any evidence that they didn't look at this report? Yes. Yes, there is. What, they didn't open the envelope? They didn't do anything with it. They didn't respond to the engineer's... Okay, they didn't respond, but is there any evidence that they didn't look at it and conclude they disagreed? They might not have communicated that to you. Well, there's no evidence that they did look at it. I mean, you would assume, Your Honor, that not only did they get the engineer's report with a proof of loss, with an estimate of damage. What the case law says they did wrong that constitutes bad faith. Is it the fact that they didn't respond? I think it's the... Yeah, I think it's they took their... They showed a disregard or a demonstrable indifference towards the interest of their insured. When the insured comes back and says... Well, they clearly, by virtue of their actions, they clearly disagreed with your expert's report, right? So what were they obligated to do that they failed to do? Were they supposed to sit down and have a meeting? Were they supposed to exchange correspondence? What does the case law say they were supposed to do after they got that report that they didn't do? I don't know if there's case law directly on point, but what they should have done, Your Honor, at the very least, is they should have taken the engineer's report that Mr. Zitzo got, they should have shared it with their expert, and said, hey, can you take a look at this? Does this have any bearing on what your opinion is? Did he raise any issues that maybe change what you think? The other thing that Mr. Zitzo... You have to show bad faith. That's your burden, right? Yes, Your Honor. So did you put in any evidence that they were required to share it with their expert and they didn't? Not that they were required, just that they didn't. That's in the record? Yes. That's in the record, Your Honor. Also, what I would say is this, Your Honor... Is there a case that says that they're supposed to send a contrary expert report over to the first expert? I mean, it sounds like it would be a good idea, but... No, I don't have a... Is there a case that says they're supposed to do that? I don't have a case that says that. The cases say that they're supposed to keep the insurance best interests in mind. I don't have a case directly on point that says, hey, if you get a competing expert report, it needs to go to the retained expert. Essentially, we would be creating law here as to the duty on behalf of an insurance company, the failure to perform constituting bad faith. Well, I actually think, Your Honor, that the court actually doesn't have jurisdiction to address the bad faith issue. And the reason why I say that, Your Honor, is because there was no Rule 50B motion at the conclusion of trial. There was no Rule 59 motion either. At the conclusion... That's fair. Let's just close the loop here. Assuming that this is properly before us, we would be creating new law in Tennessee as to the obligation of an insurance company adjusting a claim when they get a report from the other side that they disagree with. I don't believe I'm asking the court to do that, Your Honor. I think that as a jury has a right to make a determination whether or not they believe the insurance company acted in bad faith. I don't believe I'm asking this court to issue a ruling that if an insured receives a competing expert report and the insurance company doesn't share that with their retained expert, that automatically means bad faith. I'm not asking the court to do that, Your Honor. You think it becomes at least a legitimate jury issue. I do. I do. I think the way they handled this case became a jury issue as to bad faith because not only did we raise to them the issue of we have a competing expert report that has a different opinion, in a letter that we sent to the insurance company before filing suit in hopes of not having to file suit, we raised a legitimate issue regarding some of the assertions made by the auto owner's expert about things that Mr. Zitso said or didn't say. We raised that to them in hopes of they would be able to open a conversation with us, talk to their expert, try to get what his side of the story is. What happened here is they just, as my client said in trial, they just ghosted us. They didn't respond to the proof of loss. They didn't respond to the estimate. They didn't respond to any communications from Mr. Grangchamp. They didn't respond to the letter that I sent prior to filing suit. At the end of the day, they left us no choice but to file this case, and that's what we did. The other thing I would say to Your Honor is that there was a motion for summary judgment filed in this case. When they filed the motion for summary judgment, they never brought up the issue of bad faith. They could have brought up the issue of bad faith at that time, and they didn't. The only thing they brought up was that we didn't meet our burden to show there was a breach of contract. And so at that point, it went to the jury. And once it went to the jury, the jury's got the right to determine whether or not there were facts sufficient to determine whether or not there was bad faith. And again, I would just raise, like I said before, and I'll move on, no 50B motion, no 59 motion prior to filing this notice of appeal. You can say that legally is enough to, in effect, they've waived the bad faith issue on appeal. That's correct. Talk to me about Grandchamp, or however you pronounce his name. Didn't the district court error in calling him a lay witness as opposed to an expert witness? Your Honor, my opinion on Mr. Grandchamp was that he was hired as a public adjuster. He was a fact witness. He was hired not at the outset of the claim, but during the claim process. He was not hired for purposes of being an expert witness for this litigation. He was hired as a public adjuster to help determine not only what the responsibilities were of auto owners under the policy, but also to come up with the damages. But isn't a public adjuster an expert? I mean, he has expertise that's more than a lay person. I mean, he can express opinions that lay people can't, doesn't he? And doesn't that make him an expert? I don't know if it makes him an expert right automatically out of the gate. Isn't that the whole definition of an expert? I mean, he can express an opinion that's not in the realm of lay people, that lay people cannot express opinions as to things that need expertise. So it seems to me like he is an expert. Well, my thought process on that, Your Honor, was that I think if we were asking Mr. Grangsham to give opinions regarding terms and conditions of the policy, coverage issues that a lay person wouldn't know, I think he could be considered an expert. But he's coming up with damage calculations. He did. He came up with a damages calculation based on his experience as a public adjuster. Is this a little bit more nuanced in the sense that had he offered an opinion as to the reason why this retaining wall fell down, would you concede that that puts him over into the realm of an expert? I would, Your Honor. So he is an expert for certain purposes. But I understand your argument is the purpose for which you used him, you didn't use him as an expert. Is that basically it? Yeah, that's correct. I was using him more as a fact witness, Your Honor, because he had involvement with the claim before litigation occurred. So that was what ---- It's a little odd to me. I mean, theoretically you could have, well, you couldn't hire me because I'm a judge. But let's say I was just a man on the street, and you brought me in to look at the damage and then say, hey, buddy, there's also this software program you can look. And you had me come up with what Mr. Grangsham came up with. Well, could I do that? Would any court allow me to testify? Probably not, Your Honor. I think I would say a couple things. One is, in what was in my mind, just so you guys know, right, wrong, or indifferent, as Mr. Evans brought up in trial, Mr. Grangsham was a public adjuster who was being compensated on a contingency fee basis. I was not trying to use him as an expert because I didn't want to, you know, have a specter of an expert witness being compensated on a contingency fee basis. I was trying to use him just as a fact witness for the damages to the house. It was our opinion that just for the damages to the house, it didn't necessarily fall within the realm of having to be an expert. You had a wall on the house that caused damage to siding. It broke an HVAC unit, and it broke a porch. That's what he estimated the damage to be. We did retain Mr. Weintraub, who was excluded as an expert. The reason why we retained Mr. Weintraub was twofold. One was because he was a licensed general contractor. The second reason we retained him, really the more important, at least at that time, was because we wanted him to give an opinion on what the value of the damage was for the retaining wall. At the time, I did not realize that the policy limit for the retaining wall was only $14,150. So when you look at Mr. Weintraub's report, the primary portion of his report actually dealt with the retaining wall, which is a lot more complicated on how do you shore a retaining wall, how do you comply with OSHA, how do you do all this work, that I believe required not only a calculation of what the damages were, but more of expert testimony on how do you do this without actually getting somebody killed while they were doing that work. So that was one. You still got the position that even if the trial court was wrong on the expert issue, that it was harmless? I do, Your Honor. And the reason I say that, and I'm out of time, if I could just finish answering your question, as you pointed out, Your Honor, our first witness was Craig Raymond, who was the corporate representative of auto owners. And during his testimony, we provided him with a copy of the proof of loss. We also provided him with a copy of Mr. Grandchamp's estimate. We admitted both of those exhibits into evidence without any objection from opposing counsel. At that point, that information is in the record, and as a result, we think there was already sufficient information in the record that would lead a jury to make the decision that it made. Thank you very much. As I understand it, Mr. Evans argues that they had already objected to that in the motion to eliminate, so they had a continuing objection. They didn't have to raise it again. They didn't raise it. The motion to eliminate dealt with damages as a total. They didn't just say that Mr. Grandchamp can't testify. They didn't make any reference to a proof of loss. They also didn't make any reference to the estimate. What they said is that we can't present any damages whatsoever in a motion to eliminate. And what Judge Steger said, he said, no, that's incorrect. They tried saying that even the Zitzos couldn't present any evidence to that fact. The only evidence they tried asserting was that Mr. Zitzo, in his testimony, said that he couldn't give an opinion regarding what the cost to repair a retaining wall was. At that point in time, the stipulation had already been made that the cost to repair the retaining wall was at least $14,150, which was the policy limit. So the motion to eliminate wasn't just strictly related to Mr. Grandchamp or his estimate or his proof of loss.  Any further questions? Thank you. Your Honor, let me deal with one thing very quickly. We checked the record. We did object to that estimate in a separate objection. It's in the record at 85. There is a separate motion as part of the exhibits where we objected to Mr. Grandchamp. Mr. Evans, regarding the bad faith claim, did you file a 50B motion? We did not, Your Honor. Isn't that fatal to your argument on appeal? Your Honor, what we've argued is that it is related directly to the erroneous jury instruction because it basically presumed that we had given in to breach of contract, which we did not agree. And that is contrary. And so from that, the jury was left with the assumption that we had breached the contract because that question was never presented. The jury instruction that the court modified essentially presumed that there was a breach of the contract already. And then the only question left to the jury was did the affirmative defense, the exclusion, apply. And, Your Honors, what I would submit in that regard is when you look at what Tennessee law requires for an insurance policy and an insurance contract, there is no relief from the plaintiff having to prove that by a preponderance of the evidence that the contract was breached. We understand that. But to Judge Griffin's point, you didn't file a Rule 50B motion, and it sounds like you therefore waived the sufficiency of the evidence on the bad faith claim. We did not file Rule 50, Your Honor. Your Honor, from the standpoint, though, of where we stand with the Tennessee law, we essentially have the district court creating new law. There is no decision anywhere in the state of Tennessee that says the jury has not asked the question regarding whether or not there was a breach of the contract. That question was never presented to this jury. And under Tennessee law, as we have it currently, it should have. Nobody is disputing that you have to prove that the contract was breached. Nobody is arguing that, as I understand it. The question is, did the stipulation eliminate the need to present that question to the jury? It all comes down to what the import or effect was of the stipulation, unless I'm just missing something. You're not. And they're in any case that talks about that, right? There's not. But, Your Honor, what I'm saying to you. Why are we creating some sort of law? This is solely based on what that stipulation said. That stipulation. And whether you, frankly, screwed up in the stipulation. I know one thing. I'll never stipulate to another fact again in any trial in my life. But what we were very carefully trying to say is the parties stipulate that the property was damaged by a storm, but disagree whether it was collapsed due to wind or hydrostatic pressure. We did not stipulate to direct accidental physical loss. Your policy covers that. Ignore the exclusion for a minute. Your policy, your risk policy, covers that regardless of whether it's water or wind. Unless it's excluded. Am I right about that? The policy covers it if it is wind. Yes. It doesn't cover it if it's water? Hydrostatic pressure. Because of the exclusion? Because of the exclusion. Absent the exclusion. Because you're saying they had to prove there was coverage, and then you go to the exclusion. I'm saying the point is... But when I'm trying to figure out what it is they have to prove that you didn't admit, I still can't figure that out. They have to prove that it was caused by wind. And that's everything that they presented. No, no, no, no. That's wrong. They only have to prove it was an accidental loss. Covered by the policy. It's a risk policy, so unless an exclusion applies, it's covered. They don't have to prove it's wind. Your Honor, as I read the King's Palace case, they still have to meet the conditions of the policy. One of those conditions would be to show that it is wind. No, they just have to prove it's an accidental loss. It seems like you're trying to transfer the burden of the exclusion. No, no, Your Honor. I understand the exclusion is our burden. That is showing hydrostatic pressure. You're out of time. If you want to just sum it up, I'll give you another 30 seconds. Your Honor, what I would say is this jury instruction that we got on the day of closing for the first time, citing a case on a summary judgment basis from the court sui sponte, caused significant problems. This jury was never able to answer the question related to whether there was a breach of the contract. Mr. Grandchamp was sprung on us at the last second. We did properly object to him, and it had a significant impact in terms of that's the number the jury chose. From that standpoint, Your Honor, we have two reversible errors. We would ask for a new trial as to this matter. Thank you very much. Thank you. I believe that concludes our oral argument docket this morning.